UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION AT KNOXVILLE

| | |
|---|---|
| Rick Camp, *et al.*, ) | |
| ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | No.:   3:14-CV-257-PLR-HBG |
| v. ) | |
| ) | |
| Knox County, Tennessee, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

## **Memorandum Opinion**

On June 20, 2013, deputies from the Knox County Sheriff's Department, with a warrant, attempted to arrest Jordan Camp. When they arrived at the home where he was staying, Mr. Camp, who was intoxicated and suffered from depression and bipolar disorder, barricaded himself inside the back bedroom and claimed he had a gun and was going to commit suicide. The deputies withdrew from the home and called for backup. The Sheriff's department dispatched a SWAT team and negotiator. The SWAT team entered the home and established a staging area in the kitchen. After a period of negotiations, for reasons unstated in the complaint, officers shot Mr. Camp through the bedroom door, killing him. His family and estate brought this lawsuit against Knox County, the Sheriff's Department, the Sheriff, and numerous officers. The defendants have moved to dismiss under Rule 12(b)(6) for failure to state a claim. Because the complaint does not include factual allegations to support its conclusory and formulaic recitations of the elements of their causes of action, the plaintiffs' claims will be dismissed.

## I. Background

On June 20, 2013, Knox County Sheriff's deputies went to the home of John Casey with a warrant to arrest Jordan Camp. When Deputy Chris Allison located Mr. Camp, he barricaded himself inside the back bedroom of the mobile home. Mr. Camp claimed he had a gun and was going to commit suicide. Deputy Allison withdrew from the mobile home, secured the front door, and called for assistance from the other deputies. Sergeant Phil Dalton and Lieutenant Brian Williams arrived and positioned themselves at the back door. Sergeant Dalton began negotiating with Mr. Camp while they awaited the SWAT team's arrival.

When defendant Greg Faulkner arrived on the scene, he took over negotiations. The SWAT team entered the mobile home and established a staging area in the kitchen. According to the complaint, the SWAT team entered the mobile home after a security perimeter had been established around it, and due to the mobile home's location, Mr. Camp did not present any immediate danger to a third party at that time.

The defendants allegedly knew or had reason to believe Mr. Camp suffered from mental health issues, including bipolar disorder and depression,[1] and at some point during the negotiations, Mr. Camp informed the defendants that he had ingested numerous illegal drugs and was intoxicated. Later while Mr. Faulkner was negotiating with Mr. Camp, "one or more members of Defendant Knox County Sheriff's Department" furnished alcohol to Mr. Camp.

Eventually, without explaining what event or catalyst triggered it, the complaint states that deputies fired their weapons at the closed door behind which Jordan Camp was standing. The officers discharged a total of 47 rounds, striking Mr. Camp in the face, chest, abdomen, and back, killing him. Some of the defendants initially reported that Mr. Camp fired his weapon at

---

[1] Nowhere in the complaint does it explain how the defendants would have known about Mr. Camp's mental health issues. It simply alleges that the defendants knew or should have known about them.

them, but the complaint asserts that Mr. Jordon never fired his weapon.

Following these events, the Knox County Sheriff's Office of Professional Standards interviewed the SWAT team members, including Defendants Black, Dalton, Grimes, and Lubienski. At Black, Lubienski, and Grimes' interviews, each of which lasted less than ten minutes, the defendants claimed Jordan Camp fired first. On September 23, 2013, the Knox County Sheriff's Office determined that Mr. Camp did not discharge his weapon. None of the defendants were re-interviewed after the Sheriff's office made this determination. Finally, the Office of Professional Standards' Investigative Findings did not include any reference to the officers giving Mr. Camp alcohol.

On June 15, 2014, Rick and Cindy Camp filed a complaint as parents and next of kin. On July 27, 2014 they amended their complaint. The amended complaint asserts claims for wrongful death, constitutional deprivations, conspiracy, intentional inflection of emotional distress, assault and battery, and negligence.

## II. Standard of Review

Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure require the complaint to articulate a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requirement is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A motion to dismiss under Rule 12(b)(6) requires the court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff can prove no set of facts in support of the plaintiff's claims that would entitle the plaintiff to relief. *Meador v.*

*Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir. 1990), *cert. denied,* 498 U.S. 867 (1990).

The court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The court must liberally construe the complaint in favor of the party opposing the motion. *Id.* However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.3d 434, 436 (6th Cir. 1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

### III. Discussion

#### A. Knox County Sheriff's Office and Official Capacity Claims

The federal district courts in Tennessee have consistently held that sheriff's departments are not proper parties to §1983 suits. *See Mathes v. Metropolitan Government of Nashville and Davidson County*, 2010 WL 3341889, at * 2 (M.D. Tenn. Aug. 25, 2010) (collecting cases); *Moore v. Chattanooga Police Dep't,* 2008 WL 3896114, at *3 (E.D. Tenn. Aug. 19, 2008) ("The Chattanooga Police Department is not a municipality but is merely a municipal agency or department of the City of Chattanooga rather than a separate legal entity."). Accordingly, the plaintiffs' claims against the Sheriff's Office will be dismissed.

Claims against an individual in their "official" capacity are the equivalent of suits against the government entity. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). In cases where a plaintiff has sued the sheriff and sheriff's officers in their official capacities in addition to suing the county itself, the official capacity claims are redundant. *See Newby v. Sharp*, 2012 WL

1230764, at *3-4 (E.D. Tenn. April 12, 2012) (collecting cases and dismissing official capacity claims as redundant). Because the plaintiffs in this case have asserted constitutional claims against the officers in their official capacities and have asserted the same constitutional claims against Knox County, the official capacity claims are redundant and will be dismissed.

### B. Sheriff J.J. Jones

The complaint asserts claims against Sheriff Jones in his "official" capacity; however, the caption of the case indicates that he has been sued in his "individual" capacity. (R. 3, Page ID 71, 73). The distinction is not important for the purpose of ruling on the present motion to dismiss because the plaintiffs have failed to state a claim against Sheriff Jones in either an official or individual capacity. It is well established that *respondeat superior* is not a basis for imposing §1983 liability. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("vicarious liability is inapplicable to ... § 1983 suits"); *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 80–81 (6th Cir. 1995). A supervisor cannot be held liable under § 1983 unless the plaintiff demonstrates that the supervisor actively encouraged the specific incident of misconduct or directly participated in it in some way. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

The only allegations regarding Sheriff Jones are found in paragraph 21 of the amended complaint where the plaintiffs allege that "Defendant J.J. Jones was the Sheriff and the policy maker of the Knox County Sheriff's Department." (R. 3, Page ID 77). There are no facts or even allegations pled in the amended complaint to support any claims of wrongdoing on the part of Sheriff Jones. Accordingly, the plaintiffs' federal claims against Sheriff Jones will be dismissed.

5

### C. Clyde Owen and Tom Cox

Apart from naming Clyde Owen and Tom Cox as defendants, the amended complaint asserts no allegations whatsoever regarding these two defendants' involvement in Mr. Camp's death. Moreover, the plaintiffs did not contest dismissal of the claims against Mr. Owen and Mr. Cox in their response. The plaintiffs' federal claims against them will be dismissed.

### D. Greg Faulkner and Brint Gibson

The amended complaint likewise fails to state any viable federal claims against Greg Faulkner or Brint Gibson. The plaintiffs do not allege that either of these defendants shot Mr. Camp or that either of these defendants even fired their weapons. Instead, the plaintiffs' claims against Mr. Faulkner are based on the fact that unnamed officers supplied Mr. Camp with alcohol during the negotiations. Their claims against Mr. Gibson are based on his instructing the SWAT team to enter the mobile home and establish a staging area in the kitchen. Neither of these claims can survive a motion to dismiss.

Causation is an essential element of all the plaintiffs' claims. To maintain an action, a plaintiff must allege a causal connection between the alleged injury and the conduct complained of. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Put another way, "the injury has to be fairly traceable to the challenged action of the defendant." *Id.* (internal quotations and citation omitted). With respect to Mr. Faulkner, the misconduct alleged is that, "[u]pon information and belief, one or more members of the Defendant Knox County Sheriff's Department furnished alcohol to Mr. Camp during the negotiation with Defendant Faulkner." (R. 3, Page ID 79-80). At the time the alcohol was given to Mr. Camp, the defendants knew Mr. Camp had a gun and was threatening to commit suicide. (*Id.* at Page ID 80). Giving Mr. Camp alcohol during the negotiation, the plaintiffs contend, was "unreasonable and unnecessary and

6

showed a reckless disregard for Jordan Camp's life." (*Id.*) But the plaintiffs fail to tie the furnishing of alcohol to any of the injuries alleged—there are simply no allegations that the furnishing of alcohol in any way contributed to Mr. Camp's death. Because the plaintiffs' amended complaint fails to allege a causal connection between Mr. Faulkner's alleged misconduct and any of the plaintiffs' injuries, their federal claims against Mr. Faulkner will be dismissed.

The plaintiffs' claims against Mr. Gibson are based on his and the SWAT team's entry into the mobile home. Instead of a Fourth Amendment unreasonable search and seizure claim, the plaintiffs, citing *Deshaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989), assert liability based on the "state-created danger" doctrine.[2] According to the plaintiffs, Mr. Camp was effectively seized and in police custody once they surrounded the mobile home. When Mr. Gibson allegedly failed to provide for Mr. Camp's safety, the plaintiffs aver that he violated Mr. Camp's Fourteenth Amendment due process rights. This argument, while novel, is not persuasive.

*Deshaney* and its progeny concern the government's duty to protect individuals from third parties while incarcerated, institutionalized, or similarly restrained. *Deshaney*, 489 U.S. at 200. *Deshaney* liability is appropriate in situations where "the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *Id.* at 199-200. Such liability is inapplicable to the present case where law enforcement officers were undisputedly attempting to make a lawful arrest, and had

---

[2] The plaintiffs' response does not appear to dispute the defendants' right to enter the mobile home to serve an arrest warrant. Such an entry does not give rise to a Fourth Amendment claim. *See Payton v. New York*, 445 U.S. 573, 603 (1980).

7

not placed Mr. Camp in custody such that he could not provide for his own basic human needs (including his own safety).

Alternatively to their *Deshaney* argument, the plaintiffs contend that Mr. Gibson helped create a danger that led to the death of Mr. Camp. They cite *Koulta v. Merciez*, 477 F.3d 442, 445 (6th Cir. 2007), for the proposition that a plaintiff may bring a "state-created danger" claim by showing: (1) an affirmative act by the state that created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk; and (3) that the state knew or should have known its actions endangered the plaintiff. The plaintiffs cannot satisfy the first requirement. There is no allegation that the state placed Mr. Camp at risk to an act of violence by a third party. The danger was created by Mr. Camp when he barricaded himself in the bedroom of the trailer with a loaded weapon—not by Mr. Gibson or the members of the SWAT team who were attempting to make a lawful arrest, with a warrant, of an armed, intoxicated, and suicidal suspect. Additionally, there were no third parties present. The proper analysis of the plaintiffs' claims is the Fourth Amendment's reasonableness standard, and the plaintiffs have pled no facts in support of the conclusion that the officers' actions were constitutionally unreasonable or even negligent. The federal claims against Mr. Gibson and Mr. Faulkner will be dismissed.

**E. Greg Black, Phil Dalton, Mitch Grimes, Jason Lubienski, and James Page**

These are the five defendants who shot Mr. Camp. There is no dispute that they shot him; however, nothing in the amended complaint supports the conclusion that these officers acted unreasonably in doing so. Originally the amended complaint alleged that "[n]o deputy identified a specific deadly threat before discharging their weapons," but the plaintiffs have

8

subsequently withdrawn that allegation. (R. 50, Notice of Withdrawal, Page ID 196). Without it, all that remains is a complaint specifically identifying an armed, intoxicated, mentally ill individual who barricaded himself inside the bedroom of a mobile home and threatened suicide when the police (with a warrant) attempted to arrest him. After engaging in negotiations with Mr. Camp, for reasons not alleged in the amended complaint, the officers fired upon Mr. Camp, killing him. Nothing in this sequence of events supports the conclusion that the police used unreasonable force. The plaintiffs have not identified any law for the proposition that deadly force is presumed unreasonable. They appear instead to be asking the Court to speculate as to the reason the police took the actions they took. Speculation is not an endeavor in which this Court will engage. The plaintiffs have not met their burden of alleging facts to support the conclusion that these officers' actions were unreasonable.

The plaintiffs' allegations regarding the number of shots fired do not change the result. The law is well settled that, "if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2022 (2014). The plaintiffs have not alleged that the officers continued firing after becoming aware that Mr. Camp had surrendered or become incapacitated. To the contrary, the amended complaint makes clear that Mr. Camp was barricaded behind a closed door where the officers could not see him.

Because the plaintiffs withdrew their allegation that none of the officers identified a specific threat prior to firing, there are no facts alleged from which the Court or a jury could infer an unreasonable exercise of force. As discussed above, the complaint must articulate more than a bare assertion of legal conclusions; it must contain either direct or inferential allegations respecting all material elements. *Scheid v. Fanny Farmer Candy*, 859 F.3d at 436. In *Scheid*,

9

the Sixth Circuit explained:

> [w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

*Id.* at 437 (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976)). The present holding is not based on the plaintiffs' failure to plead some arcane element of their claim; it is based on their failure to plead facts in support of the very core of their lawsuit—facts indicating that the use of force against Mr. Camp was unreasonable, reckless, negligent, or in any way improper. The federal claims against these defendants will be dismissed.

### F. Knox County

The plaintiffs' federal claims against Knox County are based on the County's alleged failure to train its officers "as to the proper policies, procedures, practices, or customs as to the handling of a SWAT stand-off negotiations [*sic*], including . . . creating a danger, providing a reasonable level of safety for the decedent . . . , and using excessive force during the seizure." (R. 3, Page ID 85). The Sixth Circuit has held, however, that "a prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." *Cook v. Bastin*, --- Fed. App'x ---, 2014 WL 5472093, at *8 (6th Cir. Oct. 29, 2014) (quoting *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006)). Because the plaintiffs have failed to plead any facts in support of their conclusion that any of the officers committed any wrongdoing that is causally connected to the injuries alleged, there can be no supervisory liability for Knox County. The plaintiffs' federal claims against the County will be dismissed.

### G. State Law Claims

The plaintiffs' state law claims will also be dismissed. Title 28 § 1367(c) provides that

district courts may decline to exercise supplemental jurisdiction over state law claims when they raise novel or complex issues of state law or, in exceptional circumstances, there are compelling reasons for declining supplemental jurisdiction. The Tennessee Governmental Tort Liability Act provides in pertinent part: "[t]he circuit courts shall have exclusive original jurisdiction over any action brought under this chapter. . . ." Tenn. Code Ann. § 29-20-307. This expresses a clear preference from the Tennessee legislature that claims under Tennessee's Governmental Tort Liability Act be handled by state courts. *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000). Accordingly, this Court declines to exercise supplemental jurisdiction over the plaintiffs' state law claims, which are largely governed by the Tennessee Governmental Tort Liability Act. Those claims will therefore be dismissed with leave to refile in state court.

### IV. Conclusion

For the above stated reasons, the defendants' motions to dismiss [R. 40, 41, 42, 45, and 53] are **Granted** as follows:

1. the plaintiffs' federal claims are **Dismissed**; and
2. the plaintiffs state law claims are **Dismissed** with leave to refile in state court.³

_____
**UNITED STATES DISTRICT JUDGE**

---

³ Sheriff Jones has also filed a motion to correct a typographical error in his motion to dismiss. (R. 47). That motion is **Granted**.

11